# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| THOMAS MAHONEY, as representative, | Case No.: 1:18-cv-00405-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE: PLAINTIFF'S MOTION TO REMAND** |
| vs. | |
| EMERSON ELECTRIC CO.; EMERSUB XCI, INC. and PAKSENSE, INC., | **(Docket No. 11)** |
| Defendant, | |

Pending before the Court is Plaintiff's Motion to Remand (Dkt. No. 11).  Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  GENERAL BACKGROUND

Plaintiff Thomas Mahoney ("Mahoney") represents the former stockholders, optionholders, and warrantholders (collectively the "Securityholders") of Defendant PakSense, Inc. ("PakSense") – PakSense is in the business of creating "temperature monitoring solution products" used by manufacturers, distributors, and retailers to monitor the environmental conditions of perishable goods throughout the produce supply chain.  *See* Compl., ¶¶ 8-10 (Dkt. No. 1-2).  On August 2, 2016, Mahoney, PakSense, and Defendants Emerson Electric Co. ("Emerson") and Emersub XCI ("Emersub")[1] entered into an Agreement and Plan of Merger (the "Merger Agreement"), whereby Emersub merged into PakSense, with PakSense surviving as a direct and wholly-owned subsidiary of Emerson.  *See id*. at ¶¶ 11 & 17.

---

[1]  Defendants contend that Emersub "was formed to facilitate the acquisition of PakSense and has no continuing existence, notwithstanding that it can continue to be sued under Delaware law."  Opp. to Mot. to Remand, p. 2 n.1 (Dkt. No. 14).

**MEMORANDUM DECISION AND ORDER - 1**

According to Mahoney, "[t]his action arises from Defendants' breach of [the Merger Agreement]."  Mem. ISO Mot. to Remand, p. 1 (Dkt. No. 11-1).  Specifically, under the terms of the Merger Agreement, the Securityholders were to receive up to $15 million in additional consideration via "earn-out" payments based on PakSense's performance in the three years (2017, 2018, and 2019) following the merger.  *See* Compl., ¶¶ 19-24 (Dkt. No. 1-2).[2]  Except, around the time of the merger (and unbeknownst to the Securityholders who voted to approve the merger), Emerson was simultaneously in negotiations to acquire (and ultimately did acquire) PakSense's direct competitor, Locus Traxx.  *See id.* at ¶¶ 26-31.  The practical effect of Emerson's acquisition of Locus Traxx – with Emerson selling both PakSense and Locus Traxx product lines – was a dilution of PakSense's product sales over time.  *See id.* at ¶¶ 38-39 ("Emerson Cargo Solutions[3] sold products from both PakSense[ ] and Locus Traxx.  Emerson Cargo Solutions sold Locus Traxx product that supplanted or displaced one or more PakSense[ ] products.").  In turn, despite Emerson's previous representations that *all* sales, including those involving Locus Traxx products, would count toward the Securityholders' earn-out payment calculations, they did not, with Emerson sending notice on January 24, 2018 that PakSense sales did not meet the 80% threshold of forecasted performance for 2017.  *See id.* at ¶¶ 34, 40-43.  Therefore, under the terms of the Merger Agreement, the Securityholders did not receive the first of the three possible earn-out payments.  *See id.*

---

[2]  Generally speaking, the terms of the earn-out payments were/are premised upon PakSense's actual performance in years 2017, 2018, and 2019, contrasted against PakSense's pre-merger forecasted performance targets in those same years.  *See* Compl., ¶¶ 21-25 (Dkt. No. 1-2).  The actual calculations for the earn-out payments – premised as they are upon PakSense's relative achievement of forecasted net revenues (starting at 80%) – are not integral to the pending Motion.  *See generally* Ex. 2.13 of Merger Agreement (Dkt. No. 1-7).

[3]  After merging with PakSense, Emerson created Emerson Cargo Solutions "and integrated PakSense[ ] with Locus Traxx under this new entity called Emerson Cargo Solutions."  Compl., ¶¶ 36, 47 (Dkt. No. 1-2).

**MEMORANDUM DECISION AND ORDER - 2**

Mahoney initiated the instant action on August 21, 2018 in Idaho state court, alleging two claims against each of the three Defendants (Emerson, Emersub, and PakSense) relating to alleged duties owed under the Merger Agreement: (1) breach of contract and (2) breach of the covenant of good faith and fair dealing. *See id*. at ¶¶ 52-63.  On September 14, 2018, Defendants removed the action to this Court, claiming that Mahoney "named PakSense as a nominal defendant in this suit solely to defeat diversity jurisdiction[4] and keep this case out of federal court."  Not. of Removal, p. 3 (Dkt. No. 1).  Defendants contend that PakSense is not a proper party because it owes no post-merger obligation to the Securityholders pursuant to the Merger Agreement, much less a post-merger obligation in connection with any earn-out payments for the Securityholders' benefit.  *See id*. at pp. 2, 8-12.  Without PakSense, diversity jurisdiction would exist under 28 U.S.C. § 1332(a)(1) because this action would then be between citizens of different States, with an amount in controversy exceeding $75,000.

Mahoney takes issue with Defendants' claim that PakSense was fraudulently joined and likewise moves to remand the action back to state court.  In this respect, Mahoney counters that "[t]he Complaint alleges actual and viable breach of contract claims against PakSense" and that the Securityholders have been damaged by, and are entitled to seek full recovery for, such breaches.  Mem. ISO Mot. to Remand, p. 2 (Dkt. No. 11-1).  With PakSense, there is no diversity jurisdiction and the action as framed cannot remain in this Court.

## II. <u>DISCUSSION</u>

### A.   Legal Standard

In deciding a motion to remand, courts look to whether the case was properly removed in the first place.  *See Salveson v. Western States Bankcard Ass'n*, 731 F.2d 1423, 1426 (9th Cir.

---

[4]   Mahoney is an Idaho resident.  *See* Compl., ¶ 1 (Dkt. No. 1-2).  PakSense is a Delaware corporation with its principal place of business in Ada County, Idaho.  *See id*. at ¶ 4.

**MEMORANDUM DECISION AND ORDER - 3**

1984).  "To remove a case from state court to federal court, a defendant must file in the federal

forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"

*Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551 (2014) (quoting 28

U.S.C. § 1446(a)).  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian

Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by

Constitution and statute, which is not to be expanded by judicial decree."  *Id*.  "It is to be

presumed that a cause lies outside this limited jurisdiction and the burden of establishing the

contrary rests upon the party asserting jurisdiction."  *Id*.  "Consistent with the limited jurisdiction

of federal courts, the removal statute is strictly construed against removal jurisdiction."  *Audo v.

Ford Motor Co.*, 2018 WL 3323244, *1 (S.D. Cal. 2018) (citing *Gaus v. Miles*, 980 F.2d 564,

566 (9th Cir. 1992)).

       "The strong presumption against removal jurisdiction means that the defendant always

has the burden of establishing that removal is proper."  *Gaus*, 980 F.2d at 566.  "Federal

jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."

*Id*.  Thus, "[i]f a district court determines at any time that less than a preponderance of the

evidence supports the right of removal, it must remand the action to the state court."  *Hansen v.

Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018).

       Here, Defendants assert diversity jurisdiction under 28 U.S.C. § 1332 as the basis for the

Court's subject matter jurisdiction.  *See supra*.  For a federal court to exercise diversity

jurisdiction, there must be "complete diversity" between the parties.  *See* 28 U.S.C. § 1332(a);

*Strawbridge v. Curtiss*, 7 U.S. 267, 267 (1806).  Accordingly, diversity jurisdiction does not

exist if any defendant is of the same citizenship as any plaintiff.  *See Caterpillar Inc. v. Lewis*,

519 U.S. 61, 68 (1996).  Further, removal on diversity grounds is improper if any defendant is a

citizen of the forum state.  *See* 28 U.S.C. § 1441(b)(2).  "[O]ne exception to the requirement of

**MEMORANDUM DECISION AND ORDER - 4**

complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state.'"  *Id.* (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *see also GranCare, LLC v. Thrower*, 889 F.3d 543, 548 (9th Cir. 2018) ("Fraudulent joinder is established . . . if a defendant shows that an individual joined in the action cannot be liable on any theory.  But if there is a *possibility* that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.") (emphasis in original).

In assessing removability, courts typically look only to the plaintiff's pleadings.  *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  But where fraudulent joinder is claimed, "[t]he defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent."  *McCabe*, 811 F.2d at 1339.  The defendant's burden of proof is high:  "[f]raudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).  "The district court . . . must resolve all disputed questions of fact in favor of the plaintiff."  *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998).  "In addition, 'the defendant must establish that plaintiff could not amend his complaint to add additional allegations correcting any deficiencies . . . .  [I]f a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met.'"  *Cogswell v. Ford Motor Co.*, 2019 WL 410475, *2 (S.D. Cal. 2019) (quoting *Martinez v. Michaels*, 2015 WL 4337059 (C.D. Cal. 2015)).  Therefore, only "if, after all disputed questions

**MEMORANDUM DECISION AND ORDER - 5**

of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned," can a non-diverse defendant be deemed a "sham defendant."  *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1169-70 (E.D. Cal. 2011).

In sum, here, if the facts alleged in Mahoney's Complaint taken as true and drawing all inferences in Mahoney's favor can possibly state a claim under applicable state law against PakSense, there is no fraudulent joinder and the case must be remanded to state court.  *See, e.g.*, *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993 (D. Nev. 2005) ("[A] plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive fraudulent joinder challenge).

**B.     Mahoney Has a Potentially Valid Claim Against PakSense; Remand is Therefore Required**

As stated above, this action relates to Defendants' alleged breach of the Merger Agreement.  *See* Mem. ISO Mot. to Remand, p. 1 (Dkt. No. 11-1).  The Merger Agreement is governed by Delaware law where the elements of a breach of contract claim are:  (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages.  *See id*. at p. 4 (citing *Interim HealthCare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. Ct. 2005)); *see also* Opp. to Mot. to Remand, p. 6 (Dkt. No. 14).  Mahoney alleges that Defendants collectively breached the Merger Agreement in several respects by:

- "[F]ailing to maintain PakSense[ ] as a separate existence from Emerson[ ] and all other entities related to Emerson[ ] with PakSense[ ] retaining all of rights, privileges, powers and franchises and continuing 'unaffected and unimpaired by the merger.'"

- "[F]ailing to provide all documentation and information necessary for the Representative and Securityholders to evaluate and analyze the Earn-Out determination."

- "[I]ntegrating PakSense[ ] with a competitor, Locus Traxx, and thereby supplanting sales of PakSense[ ] products with that of Locus Traxx products."

**MEMORANDUM DECISION AND ORDER - 6**

- "[F]ailing to account to all sales toward the Earn-Out determination."

Compl., ¶¶ 53-56 (Dkt. No. 1-2) (quoting Merger Agmt., § 2.1(b) (Dkt. No. 1-6)).

Defendants contend, however, that Mahoney has no contract-based claim against PakSense itself because PakSense has no obligations under the Merger Agreement that could be breached.  *See* Opp. to Mot. to Remand, pp. 5-9 (Dkt. No. 14) ("As a matter of law, Plaintiff cannot state a cause of action for breach of contract against PakSense because PakSense has no relevant obligations under the [Merger] Agreement. . . . .   The Complaint does not, and cannot, identify a single provision in the [Merger] Agreement that imposes any obligation, post-merger, that runs from PakSense to Plaintiff. . . . .   The terms of the contract impose upon PakSense absolutely no ongoing obligations to Plaintiff post-merger, and certainly no such obligations related to the earn-out provision. . . . .   Plaintiff's Complaint does not state – and the Motion to Remand does not identify – a single contract provision imposing an earn out obligation that runs to PakSense. . . . .   In short, PakSense cannot breach an obligation it does not have.").

After reviewing Mahoney's Complaint, the Court generally agrees with Defendants that the above-referenced obligations ascribed by Mahoney to Defendants lose some of their potential legal steam when examined as to PakSense individually.  That is, while PakSense may have survived the merger organizationally intact, the actual obligation to determine, calculate, and make earn-out payments ran/runs to Emerson alone (not PakSense).  *See* Ex. 2.13 of Merger Agmt., § 1.2(a) (Dkt. No. 1-7).  What's more, the Merger Agreement plainly provides that Emerson has the right to make business decisions regarding PakSense post-merger.  *See id.* at § 1.7 ("Each Securityholder understands and acknowledges that control of all business decisions of [PakSense] (including, without limitation, sales and marketing, capital expenditures, product pricing, product development, [and] product deployment . . .), from and after the Closing shall be the ultimate right of [Emerson], and that [Emerson] may operate its business and the business of

**MEMORANDUM DECISION AND ORDER - 7**

its subsidiaries (including [PakSense]) in the manner it deems appropriate in its sole discretion."); *see also* Merger Agmt., § 5.4(a) (Dkt. No. 1-6); *but see infra*. In other words, from Defendants' perspective, any "smoke" that surrounds PakSense's status as either a signatory to the Merger Agreement or a surviving company following its merger with Emerson, is without any actual "fire" to support a breach of contract claim against PakSense *itself*.

But Mahoney argues that the Securityholders' breach of contract claim exists independent of withheld earn-out payments to-date and relates more broadly to the fact that, despite the Merger Agreement's contemplated recognition of PakSense as a surviving company ("with all of its rights, privileges, powers, and franchises" (Merger Agmt., § 2.1(b) (Dkt. No. 1-6))), PakSense nonetheless purposely undermined and manipulated sales by swapping out its products for those of a competitor so as to avoid reaching the additional earn-out payment milestones. *See* Reply ISO Mot. to Remand, pp. 4-5 (Dkt. No. 18). Such conduct is a breach of the Merger Agreement according to Mahoney. And, while it is true that the Merger Agreement may have given Emerson the right to make PakSense's business decisions (*see supra*), there is no evidence in the record that Emerson actually did so, or at least not with respect to Mahoney's allegations on these points. Instead, it entirely plausible (even likely) that Emerson "deem[ed] [it] appropriate" to let PakSense do what PakSense thought best by way of its products, in a typical subsidiary corporate form.

With all this in mind, the claims raised are not so cut-and-dried as either party makes them out to be. Regardless, at this stage the Court's role is neither to pin down Mahoney's claims against PakSense with absolute precision, nor to then decide their merits as a matter of law. Rather, the Court must consider whether Mahoney's claims exist in a form that is (or is not) an obvious sham. In attempting to do so, the Court keeps in mind the strong presumption against removal jurisdiction, the heavy burden upon Defendants as the removing parties, and the

**MEMORANDUM DECISION AND ORDER - 8**

requirement that the facts be viewed most in favor of Mahoney. In that space, the Court

concludes that there is a possibility Mahoney can maintain a claim for relief against PakSense in

Idaho state court.  *See, e.g.*, *Candy v. 474 Club LLC*, 2007 WL 1381806, *3 (D. Idaho 2007)

("[T]he Court would agree . . . that many of the asserted claims against Defendant White are

inartfully stated and ambiguous.  However, 'doubt arising from merely inartful, ambiguous, or

technically defective pleadings should be resolved in favor of remand.'  The Court could even

agree that many of the claims fail to fully and completely articulate all the particulars of a given

cause of action.  But the Court cannot agree that there is no possibility the Plaintiff can set forth a

viable claim against Defendant White.") (quoting *Alderman v. Pitney Bowes Mgmt. Servs.*, 191

F. Supp. 2d 1113, 1116 (N.D. Cal. 2002)).  The strength of such a claim is up in the air to be

sure, but it is not definitively nonexistent as a matter of law; and that is what is required for

Defendants to demonstrate that Mahoney has fraudulently joined PakSense to this action.

Accordingly, Mahoney's Motion to Remand is well-taken and this case will be remanded

to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.  The Court

declines to exercise its discretion to award attorney's fees to Mahoney.  *See Martin v. Franklin

Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award

attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should

be denied.  In applying this rule, district courts retain discretion to consider whether unusual

circumstances warrant a departure from the rule in a given case.").

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's Motion to Remand

(Dkt. No. 11) is GRANTED and the above-entitled action is remanded to the District Court of

the Fourth Judicial District of the State of Idaho, in and for the County of Ada, Case No. CV01-

**MEMORANDUM DECISION AND ORDER - 9**

18-15435; the Clerk of the Court shall mail a certified copy of this Memorandum Decision and Order to the Clerk of the aforesaid Idaho state court forthwith.  Defendants' Motion to Dismiss (Dkt. No. 8), the parties' Joint Motion to Seal (Dkt. No. 15), and Defendant Emerson's Motion to Seal (Dkt. No. 16) are DENIED as moot.

DATED: May 24, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge